IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CANDICE ST. GELAIS, MICHAEL WARNER, DERRELL ALLEN, and EZRA AHMAD, <br><br>Plaintiffs, <br><br>v. <br><br>SAPORI DI NAPOLI, LLC., <br>Defendants. | CIVIL ACTION NO.:_____ <br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT AND JURY DEMAND**

COMES NOW Plaintiffs Candice St. Gelais, Michael Warner, Derrell Allen, and Ezra Ahmad (hereafter "Plaintiffs"), by and through undersigned counsel, and hereby files this COMPLAINT against Defendant Sapori Di Napolli, (hereinafter "Defendant" or "Sapori") and shows the Court as follows:

1.  Plaintiffs are former employees of Sapori and bring this action against the Defendant for stealing and/or improperly retaining and redistributing its servers' tips in a manner that violates the Fair Labor Standards Act. The Plaintiffs are owed all relief authorized under the Fair Labor Standards Act, as amended, 29 U.S.C.

1

§201 *et. seq.* (hereinafter "FLSA") for losses suffered as a result of Defendant's unlawful acts.

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, which confers original jurisdiction upon the District Court "of all civil actions arising under the Constitution, laws, or treaties of the United States." This action arises by way of the Fair Labor Standards Act, 29 U.S.C. §201, *et. seq.*, a federal statute.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because the acts, events and omissions which violated the FLSA occurred in the Northern District of Georgia.

4. Defendant may be served pursuant to Rule 4 of the Federal Rules of Civil Procedure by delivering the Summons and Complaint Registered Agent Daniele Florio, or to any officer, managing or general agent authorized to receive service of process at Defendant's principal office address of 314 Church Street Decatur Georgia 30030.

## ENTERPRISE AND INDIVIDUAL COVERAGE UNDER THE FLSA

5. Defendant is a Georgia limited liability corporation that operates a restaurant called Sapori Di Napolli and is an employer as defined by 29 U.S.C. §203(d).

6.  At all times relevant to this lawsuit Defendant was an enterprise with more than two employees and over $500,000.00 per year in sales or business.

7.  Plaintiffs are each individuals that worked with items that had been shipped in interstate commerce and handled credit card transactions which move through interstate commerce.

## BACKGROUND ON PLAINTIFF'S EMPLOYMENT HISTORY

8.  Candice St. Gelais began her employment with Defendant in November of 2015.  Her employment ended on or about September 9, 2019.

9.  Ms. St. Gelais was a server, meaning she took orders a delivered food to tables, making sure the dining experience was acceptable at all times.

10. Ms. St. Gelais was paid $2.13 per hour.

11. Defendant took a tip credit for Ms. St. Gelais, allowing the tips she received to raise her rate of pay to minimum wage.

12. Plaintiff Michael Warner began his employment with Defendant in October of 2015.  His employment ended on or about November 24, 2019.

13. Mr. Warner was a server, meaning he took orders and delivered food to tables, making sure the dining experience was acceptable at all times.

14. Mr. Warner was paid $2.13 per hour.

15. Defendant took a tip credit for Mr. Warner allowing the tips he received to raise his rate of pay to minimum wage.

16. Plaintiff Derrell Allen began his employment with Defendant in November of 2017.  His employment ended on or about June of 2019.

17. Mr. Allen was a server, meaning he took orders and delivered food to tables, making sure the dining experience was acceptable at all times.

18. Mr. Allen was paid $2.13 per hour.

19. Defendant took a tip credit for Mr. Allen allowing the tips he received to raise his rate of pay to minimum wage.

20. Plaintiff Ezra Ahmad began her employment with Defendant in September of 2017.  Her employment ended in July of 2019.

21. In January of 2019 Ms. Ahmad was promoted to server. As a server Ms. Ahmad took orders and delivered food to tables, making sure the dining experience was acceptable at all times.

22. Ms. Ahmad was paid $2.13 per hour.

23. Defendant took a tip credit for Ms. Ahmad, allowing the tips she received to raise her rate of pay to minimum wage.

## FACTS THAT GIVE RISE TO FLSA VIOLATIONS

24. Defendant has a policy in place that requires its servers to pool their tips. Each night the tips are pooled and policy requires the tips to be distributed to the servers based on the number of hours each server works in a shift.

25. According to the policy, credit card tips and cash tips are handled differently.

26. Tips pooled through credit card payments are distributed every two weeks in a paycheck.

27. Cash tips are also pooled. Cash tips are put into a cash tip jar and the cash tips are used to tip out the food runners and bussers on a nightly basis. The remainder of the cash tips are distributed to the servers based on the number of hours each server works in a shift.

28. Over time, some of the servers became suspicious that Defendant was not following its tip pool policy because they believed they were being shorted tips.

29. For example, on August 23, 2019, three days after she had given her two weeks' notice, Ms. St. Gelais was offered $175.00 per night to be taken out of the tip pool money, regardless as to the actual amount of tips she would receive that night. She was offered this extra money because she had put in her two weeks' notice and they wanted her to stay with the company. However, guaranteeing Ms.

St. Gelais $175.00 per night in tips would necessarily short other employees their appropriate tip amounts.

30. The August 23, 2019 offer to Ms. St. Gelais, as well as a general suspicion, prompted Ms. St. Gelais and Mr. Warner to start keeping close track of nightly tips and the hours each server worked.  Ms. St. Gelais and Mr. Warner were the servers who counted the drawer and did the closing paper work each night.  The closing paper work would show credit card tips, sales, and cash transactions so it was easy for them to monitor total credit card tips over a period of time.  They discovered that they were correct, money was missing from their credit card tips.

31. One of the owners, Ambrossio Florio observed Ms. St. Gelais and Mr. Warner writing down hours and looking at credit card tip reports. He immediately contacted the primary owner, Daniele Florio.

32. Daniele Florio rushed to the restaurant on his off day, a day he normally won't even answer the phone, and asked Ms. St. Gelais and Mr. Warner to step outside, even though they had tables they were waiting on.  The servers did as they were asked.

33. During this conversation Mr. Danielli Florio admitted that he takes 20%-25% of the credit card tip pool money and uses it to pay a portion of the hourly

wages for the dishwashers and food runners. Mr. Daniele Florio blamed the lazy wait staff for his decision to redistribute their tip money.

34.  Rather than follow its previously disclosed tip pooling agreement, Defendant was haphazardly violating the tip pool agreement at its own discretion.

35.  Later that night, Mr. Daniele Florio called Ms. St. Gelais and asked her and Mr. Warner to return to work, explaining he did not know he was not allowed to redistribute their tips. He said he would compensate them and that they would figure it all out.

36.  Later, when approached about making the situation right, Daniele backtracked and denied he redistributed money to pay the hourly wages of other employees and he denied Defendant had broken the law.

37.  Plaintiff Michael Warner attempted to record this conversation and Owner Ambro Florio took Michael's phone away from him and threw it on a table. Mr. Daniele Florio claimed Ms. St. Gelais and Mr. Warner had misunderstood what he said in the previous conversation about taking their tip money and claimed he did not redistribute their tip money in anyway.

38.  Defendant broke the tip pooling agreement and violated the law in numerous ways: First, Defendant was unlawfully retaining a portion of the tips for their own benefit. Second, Defendant was redistributing part of the tip pool money to

employees who are not legally allowed to participate in a tip pool when the employee takes a tip credit, i.e. back of the house employees like line cooks and dishwashers; Third, Defendant was not distributing the tip money consistent with the tip pooling policy regarding the number of hours each server worked in a shift or in a week; Fourth, Defendant would redistribute part of the tip money to pay the salaries of other employees; Fifth, Defendant redistributed a portion of the tip money for individuals exercising supervisory duties. Sixth, Defendant was not properly distributing the cash that was tip pooled; Seventh, Defendant was unlawfully paying server bonuses out of the credit card tip pool money, which stole money from other individuals in the tip pool. Eighth, on information and belief, this lawsuit will uncover other ways in which Defendant violated the Fair labor Standards Act tip pooling laws.

### COUNT I VIOLATION OF FAIR LABOR STANDARDS ACT

39. Plaintiffs reincorporate and readopt all allegations contained in paragraphs one through thirty-eight.

40. Where an employer utilizes a "tip credit", The Fair labor Standards Act does not allow that employer to operate a tip pool where the tips are shared with employees who are not traditionally tipped employees. 29 U.S.C. §203(m)(2)

41. An employer may not retain any portion of tips received by its employees for any purpose, including allowing managers or supervisors to keep any portion of the employee's tips, regardless as to whether or not the employer takes a tip credit. 29 U.S.C. § 203(m)(2)(B)

42. The Defendant violated the FLSA's requirements regarding tips and tip pooling.

43. Plaintiffs have all been financially damaged as a result of the Defendants actions.

44. Any employer who violates 29 U.S.C. §203(m) shall be liable to the employee in the amount of the sum of any tip credit taken by the employer, and all such tips unlawfully kept by the employer, in addition to an equal amount as liquidated damages. Plaintiffs are also entitled to recover a reasonable attorney fee and costs of the lawsuit.  29 U.S.C. §216(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demands judgment against the Defendant for all the tip money unlawfully retained by Defendant, all tip credits monies unlawfully retained, liquidated damages, attorney fees, costs and all further relief the Court of Jury determines to be just and appropriate.

JURY DEMAND

Plaintiffs request a Jury Trial for all issues this Court deems appropriate for the jury.

Dated this 16th day of December, 2019.

/s/ *Thomas C. Wooldridge*
Thomas C. Wooldridge
Georgia Bar No. 384108
Attorney For Plaintiffs

Wooldridge & Jezek, LLP
123 Peachtree Street NE
Suite 1900
Atlanta, GA 30309
Tel: 404-942-3300
Fax: 404-942-3301